Good morning, your honors. If it pleases the court, my name is Ronald Javinsky of the law office of Ronald Javinsky, and I represent Manuel Pigue and would request that I be allowed to reserve two minutes. You're Ronald Javinsky of the law office of Ronald Javinsky. I can't get enough. I should call myself CEO maybe too. Yeah, yeah, yeah. Or, you know, LLD. Your honors, this is a case that the jury verdict defies logic. The evidence here was overwhelming and it permits only one conclusion. And that conclusion is contrary to the jury's verdict. There is really no rule 50 motion at the close of evidence. I'm sorry, your honor. Did you file a rule 50 motion at the close of evidence? Uh, no, your answer is no, isn't it? I'm sorry, your honor. The answer is no. The answer is no. No, you're right. Yes. What's the effect of that? Well, your honor, I don't believe it has any effect because there is no factual or evidentiary dispute. It has an effect under the law. You know what it is, but there's no evidentiary dispute here and there's no factual dispute in our minds. This is just a matter of the, an erroneous application of the facts to the law. The facts were well established in this case that the plaintiff was beaten with a nightstick. Uh, he was compliant, calm, noncombative, and, uh, was beaten to the ground by between three and seven blows with a nightstick. That's the purpose of the motion. Matter of law, judgment as a matter of law, rule 50. Well, and then you're getting to sufficiency of the law. There was a, uh, a motion for a new trial presented subsequent to that, your honor, which I feel, uh, but the law is clear. If you don't file a rule 50 motion at the close of evidence, then a different standard, a different view is taken of the facts. Isn't that correct? Yes, your honor. And you know what that view is, don't you? Not offhand, your honor. Well, when's the last time we read rule 58? Probably when the, uh, the appellee's brief was submitted. It's essentially, there has to be an absolute, uh, absence of evidence. Can you say that there's an absolute absence of evidence to support the verdict? Oh, definitely, your honor. Okay. Definitely. Uh, and there's, there's no factual dispute in this case. The facts are, there, there aren't a lot of facts in this case. They're undisputed. It's just a matter of whether or not pulling out a nightclub under these circumstances and beating Mr. Begay to the ground was excessive force. And I don't see how anyone can come to any conclusion other than that it was. This is not a tactic that the, uh, police are justified in using. Uh, they would, he was not, uh, fleeing the scene. He had no weapons on him. Uh, prior to that, he was asked, he was in pulled out of the picket line, was asked if he had any weapons. He said, yes. He pulled out a silver pocket knife and a workman's tool that he said he uses for work because he was on the picket line. He was at work prior to going on to the picket line. He had a 10 minute calm conversation with the officer in question. And then when the two other officers came over, according to Mr. Begay and the witnesses, he was told in the officer's amendments, stand aside. He did put your hands on top of your head. He did. And then his hand was grabbed and twisted and he turned in the direction of the And that was perceived as being combative. And he was beat with a nightstick. So the facts, I don't, there are no disputes as to those facts. It's just the legal, the legal standard, the way we view a sufficiency of the evidence claim is first of all, in the light most favorable to the prevailing party, right? Yes. Assume in this instance that the jury believed the officers and not your They were just, I mean, there is no factual dispute. His actions justified the use of force actually employed. Well, I think that's the application of the law. Is there an absolute absence of evidence of that, assuming the officer's testimony to be true? There is an absolute lack of that, Your Honor. This is clearly a matter of applying the law to the facts. He says he just innocently turned. They say they interpreted that gesture as a resort to force against them. That was their interpretation, their perception. Okay. Now it's a conflict. There's a conflict in the evidence and we view it in the light most favorable to the prevailing party, which means is we assume that the officer correctly perceived that your client made a combative gesture toward him and that the force employed was a reasonable response to that act. It was not a reasonable response to that. Even assuming argument. No, you think it was not reasonable, but we have to view the evidence in the light most favorable to the plaintiff, the person who won. And this is in light of a standard that your hurdle, not only to get over that, your hurdle has to be to prove that there's absolutely no evidence and there clearly is. There, there, there is no dispute in the evidence that the plaintiff turned around when his hand, when his arm was grabbed, twist behind his back, that he turned around. There's no, he thinks it was an innocent gesture that he was trying to comply with what was being asked of him, et cetera. The officers interpreted it as a combative move, which required some responsive force, right? I don't see that as a factor. Did Mendoza, did officer Mendoza have information that somebody on the line had a knife when he arrived? Was that? I believe he was there because he was told that someone had broken a key in the ignition of a truck, a supermarket truck that was entering the lot, crossing the picket line. And that somebody, that somebody had threatened drivers and slashed a delivery truck with a knife? He, I don't know if he had that, but the officer Anderson who gave the cuff sign probably had that information. That's probably why he gave the cuff sign. And Pegay had a knife? Not on him. He had a workman's tool and a pen knife that he used to work. Well, before that, he had taken it out of his pockets when officer Comer asked him if he had any type of weapon. He says, yeah, I have this. And he took it out and he put it on a mailbox or a newspaper stand. So that was not known to officers Mendoza and Chacoma. Which was not? I'm sorry, Ron. Which was not known? That there was any type of workman's tool or a pen knife that had prior to that time been in the possession of Mr. Pegay. Was there any reason why you didn't file the Rule 50A or didn't make the Rule 50A motion? I don't recall at this time what I was thinking at that time, two years ago, Your Honor. I'm sorry. Well, I mean, did you know about it at that time? I don't recall what transpired. I think we got your case well in hand. Thank you. Good morning, Your Honors. May it please the Court. Anne Maurer for Defendant Mark Mendoza. I would be happy to submit on the briefs unless the Court had any specific questions for me. Could you just answer the factual question about Mendoza's, the knife issue? Yes. He had been advised over the radio that there was a suspect named Manny who had threatened the truck drivers and who had possibly slashed a tire with a knife. And at the time Mendoza arrived, did he have any reason to believe that Pegay was the person with the knife? Did he testify that he had that or was there any evidence of that? I believe when Officer Chacon and Mendoza approached, Officer Comer was already speaking with Mr. Pegay, and I believe they both observed a knife on the ground, which Officer Comer had tossed on the ground away from the suspect after she retrieved it from him. And Mendoza saw that? I believe so. Okay. I'm good. Thank you. Thank you. Now we come to Writers Guild of America versus Sweet Pea Entertainment.
judges: Pregerson, Hawkins, Fisher